IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 06-00250 JMS |
| | ) | |
| | ) | ORDER RE: CONTINUED |
| Plaintiff, | ) | ENFORCEMENT OF THE |
| | ) | JULY 3, 2007 STIPULATION |
| vs. | ) | AND ORDER RE: DISCOVERY |
| | ) | |
| RAJDATTA PATKAR, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER RE: CONTINUED ENFORCEMENT OF THE JULY 3, 2007
STIPULATION AND ORDER RE: DISCOVERY**

## I. INTRODUCTION

The Associated Press (the "AP") seeks an order from this court

dissolving a July 3, 2007 Stipulation and Order Re: Discovery ("July 3, 2007

Stipulation and Order") entered between the United States and defendant Rajdatta

Patkar ("Patkar"), arguing that the July 3, 2007 Stipulation and Order was entered

without the required showing of good cause pursuant to Federal Rule of Criminal

Procedure 16(d). Pursuant to Local Rule 7.2(d), this motion can be decided

without oral argument. After careful consideration of the issues raised, the court

DENIES the AP's request to dissolve the July 3, 2007 Stipulation and Order.

## II.  <u>BACKGROUND</u>

On April 27, 2006, Patkar, an Indian national residing in Japan, was charged by a federal grand jury sitting in the District of Hawaii with five counts of transmitting in foreign commerce threats to injure the reputation of another in violation of 18 U.S.C. § 875(d).  Although each count of the Indictment charged acts occurring on different dates, each count alleged that Patkar willfully and knowingly intended to extort money from "R.A." by transmitting emails in interstate or foreign commerce, which "contained a threat to injure the property and reputation of R.A."[1]

In a March 30, 2007 letter to Assistant United States Attorney Clare E. Connors ("AUSA Connors"), Patkar's counsel, Assistant Federal Public Defender Pamela J. Byrne ("AFPD Byrne") requested that the government provide discovery of R.A.'s emails to two women in the Philippines that formed the basis of the threats.  Doc. No. 42, Ex. B.  AFPD Byrne wanted assurance that disclosure

---

[1] The events leading to the Indictment are summarized as follows: While residing in Tokyo, Patkar developed a long-distance internet relationship with "J.J.", a woman residing in the Philippines.  After losing contact with J.J., Patkar hacked into her email account and located emails from another woman, "M.E."  He then hacked into M.E.'s email account, and learned that R.A. encouraged J.J. and M.E. to meet R.A. and R.A.'s friend for a romantic weekend.  Patkar then apparently hacked into R.A.'s email account.  Patkar subsequently sent emails to R.A., demanding $35,000 in exchange for not publically disclosing the information that he learned. Rather than pay Patkar the $35,000, R.A. contacted law enforcement.

of R.A.'s emails "would subject [R.A.'s] reputation to unfavorable scrutiny." *Id*.

AFPD Byrne also stated in her letter that, "[i]f absolutely necessary, we can draft a

limited agreement not to reveal the content, at least not until trial." *Id*.

On April 18, 2007, AUSA Connors provided additional discovery to

Patkar, including "the emails that comprise the basis of the extortion . . . ." Doc.

No. 42, Ex. C.  With the discovery, the United States enclosed a proposed

protective order.  *Id*.  AFPD Byrne did not sign the proposed protective order;

instead, on June 12, 2007, she filed a Motion to Clarify Necessity for

Government's Proposed Order Restricting the Dissemination of Information

Concerning this Case ("Motion to Clarify").  In that Motion, Patkar sought

clarification of the government's request that "the name of the alleged victim and

certain details of the instant offense are not revealed unless and until there is a trial

on the merits." Doc. No. 12, at 2.  In a response to the Motion to Clarify, the

government represented that it disclosed to the defense "the very information the

defendant had threatened the victim he would disclose if the victim did not pay

him the sum of $35,000." Doc. No. 15, at 6.  On the same date, the United States

filed, under seal, a Supplement to Response to Defendant's Motion to Clarify

Necessity for Government's Proposed Order Restricting the Dissemination of

Information Concerning this Case with three attached exhibits ("Supplemental

Response to Motion to Clarify").  Doc. No. 16.

       Prior to ruling on the Motion to Clarify, the parties entered into a

stipulation, which was approved by Magistrate Judge Leslie E. Kobayashi.  The

July 3, 2007 Stipulation and Order, originally filed under seal, provides:

> IT IS HEREBY STIPULATED AND AGREED by and
> between the parties herein that disclosure by the Office of the
> Federal Public Defender of the discovery materials related to
> the extortion of the victim, herein described by the initials
> R.A., and more particularly described below, provided by the
> United States Attorney's Office shall be limited to the
> defendant, the staff of the Office of the Federal Public
> Defender, and any experts retained by the Federal Public
> Defender.  The discovery materials covered by this stipulated
> order are documents Bates stamped 654 through 745, which
> were provided to the Federal Public Defender by the United
> States on April 18, 2007.
>
> IT IS FURTHER STIPULATED by and between the parties
> that this agreement and court order shall continue until further
> order of the court.

       Based on media inquiries, on November 6, 2007, this court entered an

Order to Show Cause Why Documents Filed under Seal Should Remain under

Seal; Order Regarding July 3, 2007 Stipulation and Order Re: Discovery

("November 6, 2007 Order").  Doc. No. 36.  The November 6, 2007 Order first

ordered the parties to show cause why the Supplement to Response to Defendant's

Motion to Clarify and the July 3, 2007 Stipulation and Order should remain sealed.  The court subsequently entered an order unsealing these documents (other than redaction of the victim's name).  Doc. No. 41.

> The November 6, 2007 Order also directed the United States to:
>
> > provide a more detailed explanation to the court as to the type of documents subject to the Stipulation and Order (that is, a general description of the documents subject to the Stipulation and Order), the good cause for the entry of the Stipulation and Order during the discovery phase, and the good cause for the Stipulation and Order to remain effective now that the criminal proceeding has concluded.

The United States described the documents as "materials that comprised the basis of the extortion such that if revealed, would cause damage to the reputation of the victim.  Most of these materials are in the form of email communications."  Doc. No. 40, at 4.  It explained its good cause, in part, as fulfilling its obligation under 18 U.S.C. § 3771 "to respect a victim's privacy."[2]  *Id*. at 5.

> The Order to Show Cause Why Documents Filed Under Seal Should Remain Under Seal was scheduled for a hearing on November 28, 2007.  Prior to

---

[2]  The United States further responded that "[n]ow that the case has concluded, there is no legitimate reason for the defense either to continue to possess or to disclose these materials.  If the materials were to be returned voluntarily to the United States, the need for maintaining the Stipulation and Order concerning disclosure might be obviated.  Otherwise, the United States requests that it remain in effect."  Doc. No. 40, at 5.  Patkar subsequently refused to return the discovery material to the United States.  Doc. No. 43.

the hearing, the court received a letter from counsel for the AP, seeking

permission to participate in the November 28, 2007 hearing.  Doc. No. 46.  The

court subsequently granted the AP's request to intervene.  Doc. No. 48.  On

December 14, 2007, the AP filed its Memorandum Regarding July 3, 2007

Stipulation and Order Re: Discovery.  Doc. No. 49.  The government filed a

Memorandum in Opposition to Intervenor Associated Press's Memorandum

Regarding July 3, 2007 Stipulation and Order Re: Discovery on January 4, 2008.

Doc. No. 50.

### III.  ANALYSIS

The AP's request for the court to dissolve the July 3, 2007 Stipulation

and Order presents an issue not previously addressed by this court or this circuit.

The court recognizes that courts in our country have long acknowledged a

"general right to inspect and copy public records and documents, including

judicial records and documents."  *Nixon v. Warner Commc'n, Inc.*, 435 U.S. 589,

597 & n.7 (1978); *see also Kamakana v. City & County of Honolulu*, 447 F.3d.

1172, 1178 (9th Cir. 2006).  "Indeed, there is a strong presumption in favor of the

common law right to inspect and copy judicial records."[3]  *Phoenix Newspapers,*

---

[3]  In the Ninth Circuit, a strong presumption of access to judicial records may be overcome only on the presentation of articulable facts, not unsupported hypothesis or conjecture.

(continued...)

*Inc. v. U.S. District Court for the District of Arizona*, 156 F.3d 940, 946 (9th Cir.

1998); *see Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206,

1212 (9th Cir. 2002) (The common law right of access applies to "all information

filed with the court."). The court further recognizes that "members of the public

have a right of access to criminal proceedings secured by the First Amendment."

*Tennessee v. Lane*, 541 U.S. 509, 523 (2004) (*citing Press-Enterprise Co. v.*

*Superior Court of Cal., County of Riverside*, 478 U.S. 1, 8-15 (1986)). Indeed,

"public access to criminal trials and the selection of jurors is essential to the

proper functioning of the criminal justice system." *Press-Enterprise Co.*, 478 U.S.

at 12.

　　　　In determining the AP's request, however, the court is guided by what

is -- and what is not -- presented in this case. This is not a civil case, but a

criminal action that never proceeded to trial. Further, the documents at issue were

never submitted to the court; they are not part of the judicial record of this case.

Instead, the government provided the documents as part of its Federal Rule of

Criminal Procedure 16 discovery obligation to the defendant.[4] It is with these

---

　　　[3](...continued)
*See Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995).

　　　[4] In a criminal case, "[d]iscovery is neither a public process nor typically a matter of
public record. Historically, discovery materials were not available to the public or press."

(continued...)

facts that the court determines the issue presented -- whether there was good cause

to issue the July 3, 2007 Stipulation and Order preventing disclosure of discovery

materials provided to Patkar's counsel, and if so, whether the good cause

dissipated based on Patkar's guilty plea and sentencing.

Pursuant to Federal Rule of Criminal Procedure 16(d)(1), "Protective

and Modifying Orders," a "court may, for good cause, deny, restrict, or defer

discovery or inspection, or grant other appropriate relief."  "[T]he trial court can

and should, where appropriate, place a defendant and his counsel under

enforceable orders against unwarranted disclosure of the materials which they may

be entitled to inspect."  *Alderman v. United States*, 394 U.S. 165, 185 (1969).  As

explained by the Advisory Committee Notes to the 1974 amendment:

> [D]iscovery should be accomplished by the parties themselves,
> without the necessity of a court order unless there is dispute as
> to whether the matter is discoverable or a request for a
> protective order under subdivision (d)(1).  The court, however,
> has the inherent right to enter an order under this rule.

The Ninth Circuit has yet to define what constitutes "good cause" to

restrict discovery pursuant to Federal Rule of Criminal Procedure 16 -- whether

---

[4](...continued)
*United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986); *Cf. In Re San Juan Star Co. v. Barcelo*, 662 F.2d 108, 115 (1st Cir. 1981) ("Nor can the discovery process lay claim to the long tradition of openness enjoyed by criminal or civil trials.").

for documents found in the judicial record, or for unfiled discovery materials.

From the court's review of caselaw, the Third Circuit appears to be the only circuit

that has set forth a standard under Federal Rule of Criminal Procedure 16(d)(1),

albeit one related to access of judicial records, not records provided in discovery

never made part of a judicial record.  Specifically, *United States v. Wecht*, 484

F.3d 194, 211 (3d Cir. 2007), adopted the same standard it applies for access to

civil judicial records under Federal Rule of Civil Procedure 26(c).[5]

      This court is not convinced that the Ninth Circuit would apply these

civil standards to protective orders in criminal actions.  Further, the facts presented

here differ from *Wecht* -- the R.A. documents have not been filed with the court or

otherwise incorporated into the court's proceeding,[6] and are therefore not judicial

---

[5]  In *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007), the Third Circuit found
that:

> Good cause [under Federal Rule of Criminal Procedure 16(d)] is
> established on a showing that disclosure will work a clearly defined and
> serious injury to the party seeking closure.  The injury must be shown with
> specificity.  Broad allegations of harm, unsubstantiated by specific
> examples or articulated reasoning, do not support a good cause showing.
> The good cause determination must also balance the public's interest in
> the information against the injuries that disclosure would cause.

(quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786, 787-91 (3d Cir. 1994) (internal
quotation signals omitted)).

[6]  While it is unclear to the court if the government submitted the documents to the
United States Probation Office ("USPO") for the presentation of the presentence report, even if

(continued...)

records.[7]  *See Wecht*, 484 F.3d at 208 (finding that the public has a common law

right to access the records at issue, because, among other things, the "documents

were filed with the motion for *in camera* review which 'clearly establishes' them

as judicial records").  The court nonetheless finds reference to Federal Rule of

Civil Procedure 26(c) a useful tool to review the government's claim that they

have established good cause pursuant to Federal Rule of Criminal Procedure

16(d).

Federal Rule of Civil Procedure 26(c) provides that "[t]he court may,

for good cause, issue an order to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense, including . . . forbidding

the disclosure or discovery."  In this circuit, to prevent access to unfiled discovery

materials, "[a] party asserting good cause bears the burden, for each particular

document it seeks to protect, of showing that specific prejudice or harm will result

if no protective order is granted."  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331

F.3d 1122, 1130 (9th Cir. 2003) (*citing Phillips v. Gen. Motors*, 307 F.3d 1206,

---

[6](...continued)
the USPO did receive the documents, the Presentence Investigation Report remains sealed
pursuant to this court's August 21, 1990 General Order Regarding Guideline Sentencing and was
never made part of the court record at any time, including sentencing.

[7]  Thus, the AP does not seek release of the R.A. documents by the court.  Rather, should
the July 3, 2007 Stipulation and Order be vacated, the AP would then presumably approach
Patkar (or the Office of the Public Defender) to seek access to the documents.

1212 (9th Cir. 2002)).  "[B]road allegations of harm, unsubstantiated by specific

examples or articulated reasoning, do not satisfy the Rule 26(c) test."  *Beckman*

*Ind., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

Here, the government argues that the statutory provisions of the

Crime Victims' Rights Act ("CVRA") constitute good cause for the July 3, 2007

Stipulation and Order.  A crime victim, among other rights, has the right "to be

treated with fairness and with respect for the victim's dignity and privacy."  18

U.S.C. § 3771(a)(8).[8]  The AP suggests that the CVRA does not provide any

substantive relief, citing language from *United States v. Turner*, 367 F. Supp. 2d

319, 335 (E.D.N.Y. 2005), that "[n]either the text of the statute nor its legislative

history provides guidance as to what specific procedures or substantive relief, *if*

*any*, Congress intended this provision to require or prohibit."  AP Mem. at 12

(emphasis added by the AP).  In context, however, this quotation is both

incomplete and misleading.  After this quoted language, *Turner* continues:

> The provision's broad language will undoubtedly lead to
> litigation over the extent to which courts must police the
> way victims are treated inside and outside the courtroom.
> Nevertheless, the Senate sponsors of the law were clear

---

[8]  The term "crime victim" is defined as "a person directly and proximately harmed as a result of the commission of a Federal offense. . . ."  18 U.S.C. § 3771(e).  R.A. falls under this definition.  *See also United States v. Adjani*, 452 F.3d 1140, 1151 (9th Cir. 2006) (referring to "victims" of extortion in the context of 18 U.S.C. § 875(d)).

> in their articulation of the overall import of the
> provision: to promote a liberal reading of the statute in
> favor of interpretations that promote victims' interest in
> fairness, respect, and dignity.  "It is not the intent of this
> bill that its significance be whittled down or
> marginalized by the courts or the executive branch.  This
> legislation is meant to correct, not continue, the legacy of
> the poor treatment of crime victims in the criminal
> process."  *See* Senate Debate at S4269 (statement of Sen.
> Feinstein).

*Turner*, 367 F. Supp. 2d at 335.  As a result, the court applied § 3771(a)(8)

"liberally to the extent consistent with other law."  *Id*.  *United States v. Heaton*,

458 F. Supp. 2d 1271 (D. Utah 2006), reached a similar result, finding that

§ 3771(a)(8) requires the court to consider the views of a victim before giving

leave of court to dismiss an indictment pursuant to Federal Rule of Criminal

Procedure 48(a).  The court found that its decision was consistent with the views

of Senator Kyl, one of the CVRA's chief sponsors:

> The broad rights articulated in this section are meant to
> be rights themselves and are not intended to just be
> aspirational.  One of these rights is the right to be treated
> with fairness.  Of course, fairness includes the notion of
> due process. . . . This provision is intended to direct
> government agencies and employees, whether they are in
> executive or judicial branches, to treat victims of crime
> with the respect they deserve and to afford them due
> process.

12

*Id*. at 1272 (*citing* 150 CONG. REC. S10910 (daily ed. Oct. 9, 2004)).[9]  *See also*

*United States v. Kaufman*, 2005 WL 2648070, at *4 (D. Kan. Oct. 17, 2005)

("[T]he court finds that 18 U.S.C. § 3771(a)(8) requires that sketch artists'

activities in the courtroom be restricted under the circumstances of this case.").

That Congress provided victims with the ability to enforce the CVRA by filing a

writ of mandamus likewise makes clear that the law was intended to provide

meaningful rights, and not a simple laundry list of aspirational goals as to how the

government and courts should treat victims.

R.A. thus has an unquestionable right "to be treated with fairness and

with respect for [his] dignity and privacy."  Congress, in effect, has determined

that failure to treat a victim with fairness and with respect to privacy

works a clearly defined and serious injury to the victim.  This right fully supports a

finding of good cause to limit disclosure of the R.A. documents.  Although

Magistrate Judge Kobayashi did not specifically make a finding of good cause,

this court finds that the July 3, 2007 Stipulation and Order was supported by good

cause.  The documents subject to the July 3, 2007 Stipulation and Order were

---

[9]  In a similar vein, Senator Leahy stated that the CVRA entitles "victims to assert a panoply of rights, regardless of whether the prosecution is already asserting the same rights on their behalf.  For example, at the insistence of other sponsors, this bill will enable victims to bring mandamus actions alleging the denial of their statutory right 'to be treated with fairness and with respect for the victim's dignity and privacy,'. . . ."  150 CONG. REC. S4230 (daily ed. Apr. 21, 2004).

provided to Patkar after AFPD Byrne requested discovery of R.A.'s emails to J.J. and M.E. that formed the basis of Patkar's threats.  In other words, the emails consist of the very materials upon which Patkar based his threats.  As explained by the government, the July 3, 2007 Stipulation and Order prohibits dissemination of "materials that comprised the basis of the extortion such that if revealed, would cause damage to the reputation of the victim.  Most of these materials are in the form of email communications."  Doc. No. 40.  In order to protect R.A.'s statutory right to be treated with fairness and with respect to his privacy, good cause exists to limit disclosure of these materials.

Further, that Patkar has entered a plea of guilty and has been sentenced does not limit or restrict R.A.'s rights under the CVRA.[10]  Regardless of how Patkar responded to the charges against him, R.A. retains his right to be treated with fairness and with respect to his privacy.

The court further rejects the AP's argument that the public's interest in disclosure overrides any showing of good cause.  First, it is not clear that the public's interest in disclosure of discovery material, never made part of the public

---

[10]  The AP argues that the documents at issue would have become public if this action had gone to trial.  While these documents might have become public, the court will not base a decision on what *might* have occurred in the future.  The court repeats the obvious -- the documents at issue never became part of the court's records in this case.

14

record, can override the CVRA's clear Congressional mandate.  The CVRA itself

provides no exceptions to the rights afforded, other than a balancing test that the

court must apply in determining whether to exclude a victim from a public

proceeding.  *See* 18 U.S.C. § 3771(a)(3) (stating that a victim has a right not to be

excluded from a public court proceeding "unless the court, after receiving clear

and convincing evidence, determines that testimony by the victim would be

materially altered if the victim heard other testimony at that proceeding.").  In

other words, Congress has determined, through enactment of the CVRA, that the

public interest lies in treating a crime victim with fairness and with respect to

privacy.   Further, setting aside the July 3, 2007 Stipulation and Order would

undermine the public interest in having victims of crimes -- even those

embarrassed by their conduct -- report offenses to law enforcement.  The court

understands that R.A., as a victim, came forward to law enforcement after Patkar's

extortion attempt.  Absent the July 3, 2007 Stipulation and Order, Patkar would be

free to disclose the very material that formed the basis of his extortion.  Such

disclosure would certainly act as a deterrent to a victim reporting the commission

of a crime.

>       The court finds that the government has satisfied its burden even if

the court applies a traditional test balancing the interests of the victim against the

interests of the public in disclosure.  The charges involve extortion over R.A.'s relationship to one or more women in the Philippines; they do not involve allegations of wrongdoing by R.A. in any manner.  Under these circumstances, the crime victim's right to be treated with fairness and respect for his privacy clearly outweighs any public interest in disclosure.

## IV.  <u>CONCLUSION</u>

For the reasons discussed above, the court DENIES the AP's request to dissolve the July 3, 2007 Stipulation and Order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 28, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Patkar*, Criminal No. 06-00250 JMS; Order Re: Continued Enforcement of the July 3, 2007 Stipulation and Order Re: Discovery